**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RHONDA GAYLE CROWNOVER,

Plaintiff-Appellant,

v.

CITY OF LINDSAY, OKLAHOMA,

Defendant-Appellee.

No. 99-6346
(D.C. No. 99-CV-80-C)
(W.D. Okla.)

ORDER AND JUDGMENT  *

Before **BALDOCK** , **KELLY** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

Plaintiff Rhonda Gayle Crownover appeals the summary judgment

dismissal of her civil rights action against the City of Lindsay, Oklahoma, under

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

42 U.S.C. § 1983. Because we agree with the district court that plaintiff did not raise a material issue of fact sufficient to defeat summary judgment on the issue of municipal liability, we affirm.

## Background

Sometime after midnight on August 6, 1997, plaintiff's husband was arrested at home on drug charges by police officers including Lieutenant Jack David Holloway of the Lindsay Police Department. Officer Holloway returned to plaintiff's home shortly before sunrise that day and told plaintiff he was there to strip search her. Officer Holloway arrived in a police vehicle, was in uniform and carried a gun, nightstick and handcuffs. He performed a body cavity and strip search on plaintiff, during which he placed his finger in her vagina. It is undisputed that this detention and search was without reasonable suspicion or probable cause.

Plaintiff did not report this incident to anyone until March 1998, when the Garvin County Sheriff's Office contacted her during an investigation of Officer Holloway, triggered by a similar allegation against him for improper sexual conduct. As a result of this investigation, Officer Holloway was immediately suspended, and ultimately terminated from employment with the City of Lindsay. He was also convicted of two counts of second degree rape and one count of sexual battery arising from his body cavity and strip search of plaintiff.

In its motion for summary judgment, the City of Lindsay presented evidence that Officer Holloway's actions were in direct contravention of its written policies regarding the search of females. Its police department manual states that female prisoners and detainees may not be searched by male officers except in an emergency situation in which (a) no woman officer is available, (b) an immediate search is needed because there is good reason to believe the person is concealing a weapon or other means of causing death or injury, or is concealing stolen properly that is in imminent danger of destruction, and (c) the search is made under the direction of a ranking officer, with a witness present other than the searching officer, and with all possible regard for decency. *See* Appellee's Supp. App. at 164.

The district court granted summary judgment in favor of the City because plaintiff failed to present evidence that any its policies, customs or practices caused the alleged civil rights violation. The district court also found that plaintiff's evidence failed to show that Officer Holloway was a final policymaker for the City with authority to make or change the City's policies. Finally, the district court found that plaintiff failed to present evidence in support of her claim that the City should be liable based on a failure to adequately train or supervise Officer Holloway.

**Analysis**

-3-

I.

This court reviews *de novo* a district court's grant of summary judgment, applying the same legal standard employed by the district court. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court. *See Kaul*, 83 F.3d at 1212 (10th Cir. 1996).

II.

A municipality may not be held liable under § 1983 simply because it employs a person who violated a plaintiff's federally protected rights. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liability, a plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029

(10th Cir. 2000) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986)).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

### III.

Plaintiff does not contend that an official policy caused the alleged unconstitutional action. Rather, she contends that the City is liable for Officer Holloway's actions because he was a final policymaker for the City, and because the City failed adequately to supervise or train him. As to the former claim, plaintiff cites evidence that Officer Holloway was a lieutenant with the City Police Department and was the shift commander on the night in question. She also cites to a statement in the City's police department manual which states that "[t]he Captain and Lieutenant shall be responsible for keeping the rules manual current and in good condition." Appellant's Br., Ex. A, at 1.

The question of whether an employee is a final policymaker for a municipality is question of law, subject to *de novo* review. *See Flanagan v. Munger*, 890 F.2d 1557, 1568 (10th Cir. 1989). We agree with the district court's

conclusion that plaintiff's evidence is insufficient to establish that Officer Holloway was a final policymaker for the City of Lindsay. As detailed in the district court's order, the City's personnel policy manual states that all city employees work under the direction of the City Manager and that only the City Manager has authority to amend any administrative or personnel policy or procedure. The police department's manual states that the right to modify or rescind any provisions of the police manual is reserved to the Chief of Police. Further, the City Police Chief provided undisputed deposition testimony that, even though Officer Holloway was the designated shift commander on the night in question, the Police Chief was still the person in charge of the shift and the person to be called with respect to any decisions outside an officer's normal duties. Thus, although Officer Holloway held an advanced level position within the police department, was the most senior police officer on duty the night he conducted the improper search of plaintiff, and may have had some clerical responsibility to keep the police manual current and in good condition, this is insufficient to raise a genuine issue of material fact regarding whether he had any final policymaking authority for the City.

Plaintiff next argues the City is liable for Officer Holloway's conduct because it failed to adequately train and supervise him. She first claims the City failed to adequately supervise him because the police department had vacancies in

two positions more senior than his.  Her theory is that if these vacancies had been filled, Officer Holloway would have had greater supervision and might not have been the shift commander on the night in question.  Next, she points out that the City's search policy--prohibiting male officers from searching female detainees except in emergency situations with a witness present--does not specifically use the terms "strip search" or "body cavity" search, which she claims means the City lacked any written policies or procedures with respect to these types of searches.

A plaintiff seeking to establish municipal liability on the theory that an allegedly inadequate training program led an employee to violate a plaintiff's rights must demonstrate that the municipal action was not simply negligent, but "was taken with 'deliberate indifference' as to its known or obvious consequences."  *Brown,* 520 U.S. at 407.  To impose liability under such a theory, the Supreme Court mandates that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Id.* at 405.  Indeed, the plaintiff must prove that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for additional training.  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Ordinarily, this deliberate indifference must be shown by "continued adherence to

an approach that [city policymakers] know or should know has failed to prevent tortious conduct by employees." *Brown*, 520 U.S. at 407.

We agree with the district court that the plaintiff has not met this required showing. Plaintiff did not dispute the Police Chief's testimony that there had never been a prior body cavity search of a detainee by any Lindsay police officer during his twelve-year employment with the City. Nor did she dispute the City's evidence that municipal policymakers were unaware of Officer Holloway's conduct until the March 1998 investigation, at which time they immediately suspended, then terminated, him from employment. Thus, the record indicates that there was no event or pattern of tortious conduct to put the City on notice that additional supervision or training was needed to prevent the particular constitutional violation alleged here. *Cf. id*. at 407, 411.

Officer Holloway's conduct was in direct contravention of the City's written policy for searches of female detainees, which clearly covered the more particularized "strip search" and "body cavity" search by its inclusive use of the more general term "search." Plaintiff did not dispute the Police Chief's testimony that each police officer receives a copy of the police department manual containing this policy, and must sign an acknowledgment that he has read the manual. Plaintiff did not dispute the Police Chief's testimony that all police officers receive training as to the requirements of the Fourth Amendment as well

as the proper procedures and time for conducting a body cavity search. Nor did plaintiff dispute his testimony that the police department's custom is to have female officers search female detainees and male officers search male detainees. In short, plaintiff did not present evidence that the City was on notice that any new search policy or training program was necessary. We find no evidence in the record suggesting that the City was deliberately indifferent to the rights of the plaintiff. *Cf. id*. at 408.

Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge